UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN J.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C19-5631 RSM

**ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the ALJ erred by rejecting his testimony and his treating provider's medical opinion and failing to develop the record, and requests remand for further administrative proceedings. Dkt. 11. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is 37 years old, has a high school education, and has worked as a stocker. Dkt. 8, Admin. Record (AR) 18. Plaintiff applied for benefits in October 2016, alleging disability as of July 1, 2012. AR 58. Plaintiff's applications were denied initially and on reconsideration. AR 56, 57, 86, 87. The ALJ conducted a hearing in May 2018, in which Plaintiff participated

*pro se*. AR 24-55. The ALJ issued a decision in September 2018 finding Plaintiff not disabled. AR 11-19.

### THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the July 2012 alleged onset date.

**Step two:** Plaintiff has the following severe impairments: genetic clotting disorder; history of pulmonary emboli, status-post embolectomy; chronic kidney disease; morbid obesity; hypertension; status-post septic arthritis of right knee with arthroscopic irrigation and debridement; sleep apnea.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform light work except he can never climb ladders/ropes/scaffolds; occasionally kneel, crouch, crawl, and climb ramps/stairs; and frequently balance and stoop. He cannot work at unprotected heights. He can occasionally work among mechanical moving parts. He can have occasional exposure to cold, heat, wetness, humidity, dusts, fumes, odors, and pulmonary irritants.

**Step four:** Plaintiff cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, he is not disabled.

AR 13-19. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-3.

### DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

A.      Jeanne Boudrieau, ARNP

In May 2018 Plaintiff's treating provider, Ms. Boudrieau, opined Plaintiff was unable to work due to recurrent pulmonary embolism "requiring lifelong placement of 'Greenfield filter' in the descending Aorta, intended to catch clots"; recurrent deep vein thrombophlebitis; chronic anti-coagulation "requiring frequent office clinic visits to adjust Warfarin dosing"; congestive heart failure; chronic kidney disease; malignant hypertension; diabetes; morbid exogenous obesity; chronic knee pain; and polypharmacy ("on multiple medications to manage diagnoses"). AR 2698.  Ms. Boudrieau described Plaintiff's health status as "fragile," and opined he had the capacity for daily living activities only if "punctuat[ed] with frequent rest periods." *Id*.

An ALJ may reject the opinion of a non-acceptable medical source, such as a nurse practitioner in this case, by giving reasons germane to the opinion.[3] *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014).  An ALJ must consider all opinions, including those from non-acceptable medical sources, which may in some cases even outweigh the opinions of acceptable medical sources.  *See* 20 C.F.R. §§ 404.1527(f), 416.927(f).  The ALJ gave Ms. Boudrieau's opinions "little weight" as inconsistent with Plaintiff's activities and with his improvement in 2016.  AR 17.

1.      **Activities**

The ALJ cited Plaintiff's activities of helping dress and cook for his mother, and walking slowly for up to two hours at a time.  AR 17.  Plaintiff testified that his mother has some disabilities and he helps with dressing her by "getting stuff," but his father is the one to lift his mother if needed.  AR 40.  Getting items to dress his mother does not contradict Ms. Boudrieau's

---

[3] Plaintiff's suggestion that the ALJ was required to provide "clear and convincing" or "specific and legitimate" reasons is unsupported.  Dkt. 11 at 4.  Plaintiff cites *Ryan v. Comm'r of Soc. Sec.*, which only involved acceptable medical sources.  528 F.3d 1194, 1199-1202 (9th Cir. 2008).

opinions. Plaintiff "[h]elps cook for" his mother. AR 40. In his 2016 Function Report, Plaintiff stated he spends about five minutes making sandwiches or frozen dinners. AR 211. Ms. Boudrieau opined Plaintiff could engage in daily living activities with frequent rest periods, and the ALJ identifies no evidence that Plaintiff's cooking exceeds the opined limitations.

One treatment record, a month after October 2016 surgery for pulmonary embolectomy, states Plaintiff was "getting more active again and has been walking slowly for up to 2 hours at a time with his sister on level ground." AR 2680. But by March 2017 Plaintiff was "not getting regular exercise." AR 2688. At the 2018 hearing Plaintiff testified that "walk[ing] a long period of time is rough these days." AR 43. That Plaintiff was able to walk slowly with assistance for up to two hours during at most a four-month period does not undermine Ms. Boudrieau's opinion of "inability to … maintain gainful employment," working unassisted for eight hours per day. AR 2698.

Plaintiff's activities were not a germane reason to discount Ms. Boudrieau's opinions.

**2.      Improvement with Treatment**

The ALJ discounted Ms. Boudrieau's opinions because Plaintiff's "impairments improved, including breathing, following treatment in 2016." AR 17. Elsewhere in the opinion, the ALJ found Plaintiff's "impairments did improve with treatment between March 2016 and November 2016." AR 17. This finding is contradicted by the ALJ's own description of serious and life-threatening medical issues throughout that period due to blood clots in Plaintiff's heart and lungs as well as kidney failure.

> [I]n March 2016, the claimant developed septic shock requiring pressors and intubation with a complex course for 3 weeks associated with acute renal failure and dialysis, gastrointestinal bleeding, and a septic right knee. An echocardiogram showed a large right atrial thrombus. During convalescence, he apparently developed pulmonary infarction with pneumonia. He presented in

> September 2016 with recurrent embolic disease and 2-week history of progressive shortness of breath, chest pain, and ankle edema, as well as, orthopnea [and] under[went] an embolectomy….

AR 16 (citations omitted). Upon discharge his breathing was "quite good," but any improvement was short-lived. AR 2671. In October 2016 Plaintiff presented with shortness of breath, leading to an echocardiogram showing "a large pericardial effusion," which was treated by pericardiocentesis removing over a liter of "bloody fluid" from around his heart. AR 2671; AR 16. In November 2016 Plaintiff's breathing was "markedly improved after his operation." AR 2680. But again any improvement was short-lived as by March 2017 Plaintiff was experiencing "increased exertional dyspnea." AR 2688. There are no treatment notes later than March 2017 in the record. *See* Dkt. 8 at 2-4 (Court Transcript Index).

The ALJ's finding that Plaintiff's impairments improved in 2016 was not supported by substantial evidence. It could not, therefore, be a germane reason to discount Ms. Boudrieau's opinions. Even if going from renal failure in March 2016 to fluid around the heart in October 2016 can be considered improvement, experiencing "some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). It is difficult to read the ALJ's description of Plaintiff's medical issues in 2016 and imagine that Plaintiff's impairments did not seriously affect his ability to function in a workplace.

The Commissioner argues the ALJ permissibly discounted Ms. Boudrieau's opinions because she herself "observed in December 2016 that Plaintiff looked 'really improved,' was more animated, and had more energy." Dkt. 12 at 4 (citing AR 2602). This misrepresents the record. In January 2017 Ms. Boudrieau wrote Plaintiff's "affect [is] more animated today, he looks really improved." AR 2602. Observations of Plaintiff's affect have no relevance to Ms.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 5

Boudrieau's opinions of physical limitations. Ms. Boudrieau also wrote "More energy and his walk, ambulatory without assist." AR 2602. Plaintiff's ability to walk without assistance does not contradict Ms. Boudrieau's opinions.

The ALJ erred by discounting Ms. Boudrieau's opinions without a germane reason.

## B. Plaintiff's Testimony

In a November 2016 Function Report, Plaintiff stated he had problems with breathing, walking, and lifting. AR 209. He could not stand for long periods of time and did not go out alone because he was "weak [and] unstable." AR 212. He took short walks daily. AR 212. He could walk half a block before needing to rest for two minutes. AR 214. Plaintiff testified at the May 2018 hearing that another reason he could not work was having to take time off for doctors' appointments. AR 43.

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo*, 871 F.3d at 678. The ALJ discounted Plaintiff's testimony as inconsistent with medical evidence and his activities.

### 1. Medical Evidence

An ALJ may reject a claimant's subjective symptom testimony when it is contradicted by the medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

The ALJ relied on treatment records stating Plaintiff was "feeling well." AR 15 (citing, *e.g.*, AR 1827, 1789). However, "'doing well for the purposes of a treatment program has no

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 6

necessary relation to a claimant's ability to work or to her work-related functional capacity.'" *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (quoting *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)). In appointments where Plaintiff reported generally "feeling well," he also had phlebitis, swelling of extremities, or muscle pain. AR 1789, 1827. Plaintiff should not be penalized for a positive attitude. Moreover, in this context, where Plaintiff's treating provider told him he must remain "absolutely compliant with his medications if he wants to survive," merely surviving is doing well. AR 1723. On this record, feeling well does not contradict Plaintiff's testimony.

The ALJ also cited treatment records showing Plaintiff had a normal gait, even when he reported leg pain. AR 15 (citing, *e.g.*, AR 1791). A normal gait across a doctor's office does not show that Plaintiff can stand or walk for over six hours per day, as required by light work.

Contradiction with the medical record was not a clear and convincing reason to discount Plaintiff's testimony.

**2.  Activities**

An ALJ may discount a claimant's testimony based on daily activities that either contradict her testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Plaintiff lives with his parents and helps with some household chores when needed. AR 42. For example, he washes his dish after a meal. *Id*. Plaintiff does not sweep, mop, vacuum, or do yard work. *Id*. Plaintiff's mother has some disabilities and he helps with dressing her by "getting stuff," but his father is the one to lift his mother if needed. AR 40. Plaintiff helps cook for her. *Id*. None of these activities contradict Plaintiff's testimony or show he can work full time.

1    In April 2014 Plaintiff reported he exercises 3-5 times per week for 30-45 minutes on

2    average. AR 1788. Specifically, he "[t]ries to walk and keep active." *Id*. In November 2016

3    Plaintiff reported exercising five times per week. AR 2680. The only type of exercise ever

4    mentioned in the record is walking. Walking does not contradict Plaintiff's testimony or show

5    he can work full time.

6         In October 2014 Plaintiff reported he went shrimp fishing and forgot to bring his

7    medication. AR 1763. The record does not show that while shrimp fishing Plaintiff's activities

8    contradicted his testimony.

9         At the hearing Plaintiff testified that he tries to stay active. AR 45. When the ALJ asked

10   what Plaintiff meant by "staying active," Plaintiff replied, "Just doing stuff, not bedridden, not

11   laying down all the time, sitting up interacting with people." *Id*.

12        Plaintiff's activities were not a clear and convincing reason to discount his testimony.

13        The ALJ erred by discounting Plaintiff's testimony without a clear and convincing

14   reason.

15   **C.    ALJ's Duty to Develop the Record**

16        Plaintiff contends the ALJ failed to discharge his duty to develop the record by

17   requesting, or advising Plaintiff of his right to request, updated medical records and by advising

18   Plaintiff of his right to request reopening of a prior claim denied in 2013. Dkt. 11 at 14-15.

19        **1.    Additional Medical Records**

20        The ALJ's duty to "'fully and fairly develop the record and to assure that the claimant's

21   interests are considered'" is particularly important "where, as here, the claimant was not

22   represented by counsel." *Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting

23   *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). "An ALJ's duty to develop the record

further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001).

The ALJ concluded Plaintiff was not disabled from the July 2012 onset date through the September 10, 2018, date of the decision. AR 19. The treatment notes in the record ended March 2017, however. AR 22-23. Aside from Ms. Boudrieau's May 2018 opinion, there are no medical records from March 2017 to September 2018. Yet Plaintiff testified at the May 2018 hearing that he continued to receive ongoing care for the same impairments. AR 44 (first weekly, now monthly, appointments necessary), 46-47. Having rejected Ms. Boudrieau's opinion, the ALJ had insufficient evidence to inform his disability evaluation after March 2017.

The Commissioner contends Plaintiff testified that "there was no additional evidence." Dkt. 12 at 8. At the hearing, after Plaintiff handed the ALJ Ms. Boudrieau's opinion letter, the ALJ asked, "Is there anything else?" and Plaintiff responded, "No." AR 35. This was not a representation that no relevant evidence existed, but that Plaintiff did not have any other records to hand to the ALJ. Even if Plaintiff had testified that all of his medical records were already in the record, his testimony that he was receiving ongoing care created the type of ambiguity that triggers an ALJ's duty to develop the record further.

On remand, the ALJ should ensure all pertinent medical records are included in the record.

**2.    Reopening Closed Claim**

Plaintiff contends the ALJ erred by failing to advise him of the right to request reopening of his prior application, which was denied on initial review on April 10, 2013. Dkt. 11 at 14. The Commissioner asserts any error is harmless because "[i]n that prior application, Plaintiff

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 9

alleged the same onset date." Dkt. 12 at 8.

The ALJ did not mention Plaintiff's prior application, but analyzed Plaintiff's claim as if Plaintiff was eligible to receive benefits as of the July 2012 alleged onset date. *See* AR 13-19. "[W]hen an ALJ later considers 'on the merits' whether the claimant was disabled during an already-adjudicated period … [the] ALJ *de facto* reopens the prior adjudication…." *Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2001) (citing *Lester v. Chater*, 81 F.3d 821, 827 n. 3 (9th Cir. 1995)). Plaintiff's prior application was thus reopened.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should obtain relevant medical records, reconsider Plaintiff's testimony and Ms. Boudrieau's opinions, reevaluate the RFC as needed, and proceed to step five as appropriate.

DATED this 3 day of February 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE